UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>JAIME ABURTO<br><br>　　　　　　　　　　　Defendant. | Case No.: 18-cr-1975-GPC<br><br>**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE**<br><br>**[ECF No. 51.]** |

Defendant Jaime Aburto has filed a motion seeking compassionate release or reduction of his sentence under 18 U.S.C. § 3582(c). ECF No. 51. The Government opposes. ECF No. 57 ("Opp."). For the reasons that follow, Aburto's motion is GRANTED.

**I.　BACKGROUND**

Defendant was convicted by guilty plea of one count of Transportation of Certain Aliens for Financial Gain in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (v)(II), and (a)(1)(B)(i). ECF Nos. 31, 34. Defendant was sentenced to a term of imprisonment of 44 months, 42 of which were to be served consecutively to the 6-month term imposed for violation of his supervised release in Case No. 15-cr-0922-W, followed by 3 years of supervised release. ECF No. 38. Defendant is presently serving his sentence at the

Federal Correctional Institution Miami ("FCI Miami"). ECF No. 51 at 3. As of today's date, Aburto has served 29 months, or over 65 percent of his sentence.

Aburto is 40 years old and has suffered from Type II diabetes since he was 26 years old. ECF No. 35 ("Presentence Investigation Report" or "PSR") at 14; ECF No. 55, Ex. C. A physician at FCI Miami also found Aburto to have a history of hypertension and consistently elevated blood pressure. ECF No. 55, Ex. C.

## II. DISCUSSION

Defendant now moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, there are two questions before the Court: first, whether Defendant has satisfied the administrative exhaustion requirement, and second, whether Defendant has demonstrated extraordinary and compelling reasons for a sentence reduction.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)).  One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id*.  As one district court recently explained:

> The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. . . . Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A).  *See, e.g.,* First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314- 02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

*United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release.").

### A.    Exhaustion Requirement

Section 3582(c)(1)(A) imposes an exhaustion requirement requiring a defendant to fully exhaust all administrative rights to appeal before a defendant may move the court for release. On June 4, 2020, Aburto's attorney sent the Warden of FCI Miami a request to release Aburto on home confinement due to COVID-19.  ECF No. 55, Ex. B.  On June

16, 2020, the Warden denied Aburto's request because Aburto has a Medium PATTERN Risk for Recidivism score and "[o]nly inmates with a Low or Minimum score are being reviewed for release at this moment." Opp. Ex. A.  In the denial letter, the Warden also stated that Aburto is scheduled for a halfway house report date of September 2, 2020. *Id.*  On July 12, 2020, Aburto filed the instant motion. ECF No. 51.  Aburto argues that he exhausted his administrative remedies because the Warden denied his request for transfer to home confinement and more than 30 days elapsed since he submitted the request.  ECF No. 58 at 4.  The Government argues Aburto failed to exhaust his administrative remedies.  Opp. at 10. The Government states that it "believes Defendant Aburto is taking appropriate steps to exhaust his administrative remedies, but those steps are ongoing." Opp. at 7, 10.

"Even where exhaustion is seemingly mandated by statute . . . the requirement is not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019).  There are generally three bases for waiver of an exhaustion requirement. *See United States v. Perez*, ___ F.Supp.3d ___, No. 17-CR-513-3 (AT), 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020) (discussing exceptions to statutory exhaustion in context of motion for compassionate release during COVID-19 pandemic).  "First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue." *Washington*, 925 F.3d at 118. "[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile." *Id.* at 120.  Second, "exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief," including situations where "the relief the agency might provide could, because of undue delay, become inadequate." *Id.* at 119-20.  Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." *Id.* at 119

Aburto has properly filed a request for release with the Warden, but has not yet appealed the Warden's denial of his request through the administrative review process.

4

*See* 28 C.F.R. § 571.63.  But the exceptions to the exhaustion requirement counsel in favor of considering the merits of Aburto's request.  Since Aburto filed his motion on July 12, 2020, the number of positive COVID-19 tests at FCI Miami has increased by over 100. If Aburto contracts COVID-19 before his appeals are exhausted, that undue delay might cause him to endure precisely the catastrophic health consequences he now seeks to avoid.  Requiring Aburto to continue his pursuit of agency review would subject him to undue prejudice—the heightened risk of severe illness—while attempting to exhaust his appeals.

Therefore, in light of the urgency of Aburto's request and the potential for serious health consequences given his underlying conditions, the Court waives the exhaustion requirement of Section 3582(c)(1)(A).  *See United States v. Haney*, ___ F.Supp.3d ___, No. 19-CR-541 (JSR), 2020 WL 1821988, at *4 (S.D.N.Y. Apr. 13, 2020) (courts have discretion to waive the exhaustion requirement where doing so would serve Congressional objectives in light of circumstances now faced by prisoners as a result of the COVID-19 pandemic); *United States v. Decator*, No. CR CCB-95-0202, 2020 WL 1676219, at *2 (D. Md. Apr. 6, 2020) (finding motion properly before the court where warden denied petitioner's request).

### B.    Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  Section 1B1.13 of the Sentencing Guidelines further explains that a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that:

(1) (A) Extraordinary and compelling reasons warrant the reduction; or

. . .

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

Application Note 1 to this Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release.

Aburto argues that his diabetes and history of hypertension serve as extraordinary and compelling reasons justifying his release given the COVID-19 pandemic. ECF No. 58 at 7–8. Diabetes and hypertension qualify as factors identified by the Centers for Disease Control and Prevention ("CDC") that heighten the risk of severe injury or death if he were to contract COVID-19. The Government agrees that Aburto's conditions elevate his risk with respect to COVID-19. Opp. at 12. However, the Government argues that Aburto's conditions are not sufficiently serious to establish "extraordinary and compelling reasons" justifying Aburto's immediate release. Opp. at 12. The Government also opposes the motion on the basis that Aburto would pose a danger to public safety if released based on the underlying conduct of his offense, and because of his past involvement in alien smuggling and his brother's conviction for the same offense. Opp. at 12–13.

The Court finds that the heightened risks that Aburto faces based on his medical conditions if he were to contract COVID-19 weigh heavily in favor of his release. The CDC has warned that individuals who suffer from diabetes and high blood pressure are at higher risk of becoming severely ill and dying from COVID-19. *See People Who Are at*

*Higher Risk for Severe Illness*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.  Additionally, COVID-19 has been found to trigger severe reactions in patients with diabetes and hypertension, making them more likely to develop severe symptoms of COVID-19 and die from infection than healthy individuals.  *See Report of the WHO-China Joint Mission on Coronavirus Disease 2019 (COVID-19)*, WORLD HEALTH ORGANIZATION 12 (Feb. 2020), https://www.who.int/docs/default-source/coronaviruse/who-china-joint-mission-on-covid-19-final-report.pdf; Matteo Apicella et al., *COVID-19 in People with Diabetes: Understanding the Reasons for Worse Outcomes*, 8 LANCET 782, 789 (Sept. 1, 2020), https://www.thelancet.com/journals/landia/article/PIIS2213-8587(20)30238-2/fulltext.

Any incarcerated person with one of the underlying conditions identified by the CDC is unlikely to be able "to provide self-care within the environment of a correctional facility" to avoid contracting COVID-19.  U.S. Sentencing Guidelines § 1B1.13 cmt. 1(A)(ii).  *See also* Katelyn Polantz, *Inmates Sue for Soap and Paper Towels as Coronavirus Spreads in Jails*, CNN INT'L (Mar. 31, 2020), https://www.cnn.com/2020/03/31/politics/inmates-sue-coronavirus-jails/index.html.  Prison conditions mean incarcerated individuals, as well as society as a whole, are safer the more defendants are released.  *See* The Times Editorial Board, *Coronavirus Makes Jails and Prisons Potential Death Traps. That Puts Us All in Danger*, L.A. TIMES (Mar. 18, 2020), https://www.latimes.com/opinion/story/2020-03-18/coronavirus-prisons-releases.  This is especially true for defendants like Aburto who are at high risk of contracting severe cases, and even dying, of COVID-19.  *See United States v. Ramos*, ___ F.Supp.3d ___, No. 18-CR-30009-FDS, 2020 WL 1478307, at *1 (D. Mass. Mar. 26, 2020) ("[I]t is not possible for a medically vulnerable inmate . . . to isolate himself in this institutional setting.").  Additionally, as the Parties agree, FCI Miami is host to many active COVID-19 cases.  As of August 24, 2020, the Bureau of Prisons ("BOP") has

documented 123 inmates with positive COVID-19 test results at FCI Miami. *COVID-19 Coronavirus*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/index.jsp (last visited Aug. 24, 2020). One inmate at FCI Miami has died from COVID-19. *See* Press Release, U.S. Dep't of Justice, Inmate Death at FCI Miami (Aug. 6, 2020). And, as one court has recognized, an inmate at-risk due to their health conditions "faces an imminent threat while incarcerated at FCI-Miami, which is experiencing a severe COVID-19 outbreak." *United States v. Hasson*, No. 99-CR-08063, 2020 WL 4368102, at *2 (S.D. Fla. July 30, 2020) (citing Willard Shepard, *Inmates, Correctional Officers Concerned About Growing Number of COVID Cases at Miami Prison*, NBC MIAMI, July 15, 2020, https://www.nbcmiami.com/news/local/inmates-correctional-officers-concerned-about-growing-number-of-covid-cases-at-miami-prison/2262886/). In other words, Aburto has effectively demonstrated a nexus between his medical conditions and the ongoing pandemic which supports a reduction under section 3582.

The factors outlined in section 3553 and 3582 also require consideration of public safety. 18 U.S.C. §§ 3553(a)(2)(C), 3582(c)(1)(A)(ii). Although the offense of transporting aliens is not inherently dangerous, the Court acknowledges that Aburto's conduct involved significant aggravating circumstances, including a high-speed chase with Border Patrol that caused the people Aburto was transporting to fear for their lives, and a scuffle that injured a Border Patrol agent. PSR at 4–5. Aburto was also previously convicted for the same offense in 2015 and committed the present offense while on supervised release for the 2015 conviction. PSR at 10–12. Although these facts weigh against Aburto's release, Aburto has served 29 months, or over 65 percent, of his 44 month sentence. Opp. at 4. Aburto also has a fixed address with his wife and children in San Ysidro, at which he would be subject to home confinement if released. ECF No. 51 at 3. Ultimately, the Court finds that despite the nature of Aburto's offense, releasing Aburto to home confinement after having served over a majority of his sentence would sufficiently mitigate the potential danger to the public and provide just punishment for

the offense.[1] *Cf. United States v. Tran*, No. CR 08-00197-DOC, 2020 WL 1820520, at *1, *3 (C.D. Cal. Apr. 10, 2020) (granting release where defendant had only 14 months remaining on his 15-year sentence); *United States v. Rodriguez*, ___ F.Supp.3d___, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *1, 10 (E.D. Pa. Apr. 1, 2020) (granting release where defendant had served 17 years of his 20-year sentence).

"Recognizing the risk of COVID-19 outbreaks in prisons, Congress, the President, and the Department of Justice have begun encouraging steps to release some prisoners to safer home environments." *Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *10. The coronavirus relief bill enacted on March 27, 2020 allows the Attorney General to expand the BOP's ability to move prisoners to home confinement. *See* Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2) (2020). This congressional action came after Attorney General William Barr sent a memo to the Director of the BOP recognizing that "there are some at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." Memo. from Attorney Gen. William Barr to Director of BOP, *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic* (Mar. 26, 2020), https://www.politico.com/f/?id=00000171-1826-d4a1-ad77-fda671420000. Attorney General Barr accordingly requested that the BOP use its statutory authority to release certain inmates to home confinement. *Id.*

Ultimately, it is clear that Aburto's medical condition puts him at significant risk of severe illness should he contract COVID-19, a scenario made more likely by the high number of cases reported at FCI Miami. Aburto indicates that he would reside with his

---

[1] The Government notes that Aburto is scheduled to begin a halfway house on September 2, 2020. Opp. at 4. But as congregate facilities with frequent turnover, halfway houses may pose similar risks of COVID-19 infection as prisons and jails. *See, e.g.*, *United States v. Gonzalez-Quiroz*, No. 18-CR-4517 (DMS), 2020 WL 3868751, at *1 (S.D. Cal. July 9, 2020).

wife and children in San Ysidro, California. ECF No. 51 at 2. The Court will reduce the sentence to time served and modify the conditions of supervised release to provide for home incarceration at Aburto's home in San Ysidro. *See United States v. Ben-Yhwh*, ___ F.Supp.3d ___, No. CR 15-00830 LEK, 2020 WL 1874125, at *1 (D. Haw. Apr. 13, 2020) (reducing sentence to time served and mandating home confinement on supervisory release); *United States v. Johnson*, No. 4:00-CR-40023, 2020 WL 1434367, at *5 (W.D. Ark. Mar. 24, 2020) (reducing sentence to time served and requiring defendant to live at specific care center on supervised release for 5 years); *United States v. Flores*, No. 19-CR-6163L, 2020 WL 3041640 (W.D.N.Y. June 8, 2020) (reducing sentence to time served and ordering 18 months of home confinement); *United States v. Ramos*, No. 18-CR-30009-FDS, 2020 WL 1478307, at *2 (D. Mass. Mar. 26, 2020) (granting release and ordering home detention).

### III.  FINDINGS

In light of the heightened medical risk the COVID-19 pandemic poses to Aburto in particular, there are extraordinary and compelling reasons to order his immediate release from FCI Miami. "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation." *United States v. Hernandez*, No. 18-cr-00834 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020). "It presents a clear and present danger to free society for reasons that need no elaboration." *Id.* The CDC has warned that COVID-19 poses a heightened risk to those incarcerated in jails and prisons. *Interim Guidance on Mgmt. of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf. The conditions at FCI Miami raise particular concerns for Aburto given his medical vulnerabilities, and his continued incarceration over the coming weeks would impose upon Aburto—in addition to other inmates and staff—additional and unnecessary health risks that can be minimized by his early release. *See, e.g.,* Carli Teproff & Devoun

Cetoute, *COVID-19 Races Through Miami's Federal Prison*, MIAMI HERALD (July 17, 2020); Luke Barr, *Union Officials Warn of 'Dire' Situations at South Florida Federal Prisons*, ABC NEWS (July 17, 2020).

## IV.  CONCLUSION

For the reasons set forth above, the Motion for Compassionate Release is **GRANTED**, to be effective at the close of business today.  Aburto's sentence is **MODIFIED** and **REDUCED** to time served pursuant to 18 U.S.C. § 3852(c), effective immediately, to be followed by a 36-month term of supervised release under conditions set forth in the original judgment, plus the following added special condition: (1) Aburto shall be placed in home confinement for a period of 8 months without electronic monitoring where he will be restricted to his residence at all times except for medical necessities and court appearances or other activities specifically pre-approved by the Court.

It is **FURTHER ORDERED** that Aburto shall remain in self-quarantine for a period of time not less than 14 days after his release.

Aburto is **HEREBY ORDERED** to report by telephone to the U.S. Probation Office in San Diego, California within 24 hours of his release from BOP custody.

The Government shall serve a copy of this order on the Warden at FCI Miami immediately.  The Warden of FCI Miami shall immediately release Defendant Jaime Aburto from custody.  In the event that the Warden or any party requests any clarification of or modification to this order, they shall make such request in writing immediately upon receipt of the order.

**IT IS SO ORDERED.**

Dated:  August 25, 2020

Hon. Gonzalo P. Curiel
United States District Judge